UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| ERIN SWIKE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) No. 1:17-cv-01503-JMS-MPB |
| | ) |
| MED-1 SOLUTIONS, LLC, | ) |
| | ) |
| Defendant. | ) |

# ORDER

This matter is before the Court on Defendant Med-1 Solutions, LLC's ("Med-1") Motion to Dismiss for Lack of Standing. [Filing No. 14.] Plaintiff Erin Swike alleges that Med-1 continued to attempt to collect Ms. Swike's unpaid debt despite her written refusal to pay, in violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692c. [Filing No. 1.] Med-1 now moves to dismiss Ms. Swike's complaint, arguing that Ms. Swike lacks a concrete injury as required to invoke this Court's jurisdiction under Article III of the Constitution. For the following reasons, the Court **DENIES** Med-1's Motion. [Filing No. 14.]

## I.
### LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(1) "allows a party to move to dismiss a claim for lack of subject matter jurisdiction." *Hallinan v. Fraternal Order of Police of Chicago Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). Jurisdiction is the "power to decide," and federal courts may only decide claims that fall within both a statutory grant of authority and the Constitution's limits on the judiciary. *In re Chicago, R.I. & P.R. Co.*, 794 F.2d 1182, 1188 (7th Cir. 1986). When deciding a motion to dismiss under Rule 12(b)(1), the Court accepts the allegations in the plaintiff's complaint as true and draws all reasonable inference in the plaintiff's favor. *Long v. Shorebank*

*Dev. Corp.*, 182 F.3d 548, 554 (7th Cir. 1999). The burden is on the plaintiff to demonstrate that subject matter jurisdiction exists for his or her claims. *See Lee v. City of Chicago*, 330 F.3d 456, 468 (7th Cir. 2003).

## II.
### BACKGROUND

The following facts are drawn from Ms. Swike's Complaint, [Filing No. 1], and are accepted as true for the purposes of resolving Med-1's Motion.

In 2014, Ms. Swike incurred several debts for medical services. [Filing No. 1 at 2.] Ms. Swike was unable to timely pay the debts, so the medical provider sent them to Med-1 for collection. [Filing No. 1 at 2.] On April 16, 2015, Med-1 sent a collection letter to Ms. Swike demanding that she pay one of her outstanding debts. [Filing No. 1 at 2; Filing No. 1-3.] In response to Med-1's collection letter, Ms. Swike sent a letter stating that she was "refusing to pay for the alleged debt that you are trying to collect." [Filing No. 1-4 at 1.] Ms. Swike's letter was delivered to Med-1 on April 23, 2015. [Filing No. 1-4 at 2.]

Despite Ms. Swike's written refusal to pay, Med-1 resumed its attempts to collect the debt in 2017. [Filing No. 1 at 2-3.] Med-1 contacted Ms. Swike by telephone on March 7 and May 2, 2017, and sent a collection letter to Ms. Swike on May 4. [Filing No. 1 at 2-3; Filing No. 1-5.]

On May 8, 2017, Ms. Swike filed her Complaint in this Court, [Filing No. 1], alleging that Med-1's conduct violates 15 U.S.C. § 1692c(c) which provides that "[i]f a consumer notifies a debt collector in writing that the consumer refuses to pay a debt or that the consumer wishes the debt collector to cease further communication with the consumer, the debt collector shall not communicate further with the consumer with respect to such debt," except in specific circumstances not relevant here. Ms. Swike seeks "actual and statutory damages, costs, and reasonable attorneys' fees" for Med-1's alleged violations of the FDCPA. [Filing No. 1 at 4.]

# III.
## DISCUSSION

Med-1 argues that Ms. Swike's Complaint must be dismissed because Ms. Swike lacks standing to bring her claim. Specifically, Med-1 argues that Ms. Swike has failed to allege, and is unable to allege, a concrete injury-in-fact as required to establish Article III standing. In support, Med-1 primarily relies upon *Spokeo v. Robins*, 136 S. Ct. 1540 (2016), and three recent Seventh Circuit cases where plaintiffs alleging various consumer protection claims were found to lack a concrete injury.

In response, Ms. Swike argues that receiving Med-1's prohibited calls and letters constitutes a concrete injury and distinguishes the cases upon which Med-1 relies. Ms. Swike argues that the vast weight of the persuasive authority supports her position that violations of the FDCPA, such as those alleged in this matter, satisfy the concrete injury requirement.

Under Article III of the U.S. Constitution, "whether the plaintiff has made out a 'case or controversy' between [herself] and the defendant" is a "threshold question in every federal case." *Warth v. Seldin*, 422 U.S. 490, 498 (1975); *see* U.S. Const. Art. III § 2, cl. 1. Standing is the aspect of the case or controversy requirement that looks to whether a plaintiff has a "vested interest in the case." *Cabral v. City of Evansville*, 759 F.3d 639, 641 (7th Cir. 2014). The standing inquiry requires a plaintiff to establish three elements: (1) an "injury in fact" suffered by the plaintiff, (2) a causal connection between the injury and improper conduct, and (3) that the injury would likely be redressed by a favorable result. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). An injury in fact, in turn, is "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent." *Id.* at 560 (internal quotation omitted). "Concrete" and "particularized" are distinct, "independent requirement[s]" of an injury in fact. *Spokeo*, 136 S. Ct. at 1548.

In this case, Med-1 argues that Ms. Swike cannot establish the "injury in fact" element of the standing analysis because her alleged injury is not concrete. In *Spokeo*, the Supreme Court explained that a concrete injury is an injury that "actually exist[s]," meaning that it is "real, and not abstract." *Id.* (internal quotation omitted). While "concrete" does not necessarily mean "tangible," a plaintiff cannot "allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III." *Id.* at 1549. At the same time, however, "Congress may create a statutory right or entitlement the alleged deprivation of which can confer standing to sue even where the plaintiff would have suffered no judicially cognizable injury in the absence of statute." *Warth v. Seldin*, 422 U.S. 490, 514 (1975). As the *Spokeo* Court concluded, "the violation of a procedural right granted by statute can be sufficient in some circumstances to constitute injury in fact. In other words, a plaintiff in such a case need not allege any additional harm beyond the one Congress has identified." 136 S. Ct. at 1549.

*Spokeo* involved a lawsuit against an operator of a website (called Spokeo) that procures personal information in response to online search requests. *Id.* at 1545-46. The plaintiff alleged that the results Spokeo produced upon searching for the plaintiff's name returned inaccurate information in violation of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*, which requires (among other things) consumer reporting agencies to follow procedures to ensure the accuracy of consumer reports and to provide consumers with a notice of the reporting agencies' statutory responsibilities. *Id.* at 1545 (citing 15 U.S.C. § 1681e(b), (d)). The inaccurate information concerned the plaintiff's marital status, familial status, age, employment, and education. *Id.* at 1546. In explaining when a violation of a procedural right may constitute a concrete harm, the Supreme Court provided several examples. *Id.* at 1549-50. On the one hand, the failure to provide a congressionally-mandated disclosure effects a concrete harm upon a party

4

seeking the undisclosed information. *Id.* (collecting cases). On the other hand, the failure to provide the mandated FCRA notice would not constitute a concrete harm if the reported information were all correct. *Id.* at 1550. Nor would providing an incorrect zip code, "without more, . . . work any concrete harm." *Id.* Contrary to Med-1's representations, however, the Supreme Court did not find the plaintiff's standing "questionable." [Filing No. 15 at 4.] Rather, the Court held only that the Ninth Circuit's standing analysis omitted the critical "concreteness" element of an injury in fact, and took "no position as to whether the Ninth Circuit's ultimate conclusion—that [the plaintiff] adequately alleged an injury in fact—was correct." *Spokeo*, 136 S. Ct. at 1550. On remand, the Ninth Circuit had "little difficulty concluding" that the alleged false consumer reports constituted a concrete harm. *Robins v. Spokeo Inc.*, 867 F.3d 1108 (9th Cir. 2017). While *Spokeo* articulates the elements and provides some guidance for assessing Med-1's arguments, given the limited scope of the Supreme Court's holding and the result in the court of appeals on remand, Med-1's assertion that this case is factually analogous to *Spokeo* is tenuous.

As both parties recognize, the Seventh Circuit has not decided an FDCPA standing case since *Spokeo*. Med-1 thus turns to three Seventh Circuit cases applying *Spokeo* in other contexts and deciding that the respective plaintiffs lacked a concrete injury: *Eike v. Allergan, Inc.*, 850 F.3d 315 (7th Cir. 2017); *Gubala v. Time Warner Cable, Inc.*, 846 F.3d 909 (7th Cir. 2017); and *Meyers v. Nicolet Restaurant of De Pere, LLC*, 843 F.3d 724 (7th Cir. 2016). As the district courts across the circuit have uniformly held, none of these cases is applicable to Ms. Swike's FDCPA claim. *See, e.g.*, *Hernandez v. Midland Credit Mgmt.*, 2017 WL 2985764 (N.D. Ill. 2017) (addressing inapplicability of *Eike* and *Meyers*); *Dunham v. Robert Crane & Assocs., LLC*, 2017 WL 2664287 (S.D. Ind. 2017) (addressing inapplicability of *Gubala* and *Meyers*); *see also, e.g.*, Long v. Fenton & McGarvey Law Firm P.S.C.. 223 F. Supp. 3d 773 (S.D. Ind. 2016) (noting dispositive

differences between violations of the FDCPA and violations of other consumer protection statutes, such as the Cable Communications Policy Act).

*Eike* involved a state-law consumer fraud case alleging that the defendant made eye drops that were unnecessarily large, causing the plaintiffs to spend more money than they would have to if the drops were smaller. 850 F.3d at 316. The Seventh Circuit held that the plaintiffs lacked standing because "[t]he fact that a seller does not sell the product that you want, or at the price you'd like to pay, is not an actionable injury; it is just a regret or disappointment—which is all we have here, the class having failed to allege 'an invasion of a legally protected interest.'" *Id.* at 318 (quoting *Spokeo*, 136 S. Ct. at 1548).

*Gubala* involved a plaintiff's allegations that a cable company failed to destroy his personal information after he terminated his service, in violation of the Cable Communications Policy Act, 47 U.S.C. § 551(e). 846 F.3d at 910. But the plaintiff failed to allege that the defendant's failure to destroy the information harmed him in any way. *Id.* For example, the plaintiff did not allege that the defendant "has ever given away or leaked or lost any of his personal information or intends to give it away or is at risk of having the information stolen from it." *Id.*

Finally, the plaintiff in *Meyers* alleged that the defendant restaurant failed to truncate the expiration date of his credit card information on his receipt, in violation of the Fair and Accurate Credit Transactions Act, 15 U.S.C. § 1681c(g)(1). 843 F.3d at 725. But the plaintiff "discovered the violation immediately and nobody else ever saw the non-compliant receipt. In these circumstances, it is hard to imagine how the expiration date's presence could have increased the risk" that the plaintiff would suffer any actual harm, such as identity theft. *Id.* at 727.

The Court agrees with the prevailing view expressed in cases such as *Hernandez*, *Dunham*, *Long*, and many others that Med-1's alleged FDCPA violations are distinct from those at issue in

*Eike*, *Gubala*, and *Meyers* and are sufficient to establish a concrete injury in this case. *Eike* is wholly inapposite, inasmuch as the plaintiffs failed to allege any injury at all, "procedural" or otherwise, from the manufacturer's decision to produce eye drops a certain way. *Gubala* and *Meyers* are at least relevant, as the plaintiffs in those cases alleged that the defendants failed to comply with requirements imposed by federal statutes. In those cases, however, the plaintiffs neither received something from which they were protected (such as prohibited contacts from a creditor), nor failed to receive something to which they were entitled (such as a required disclosure from a creditor). The rationale of *Bugala* and *Meyers* does not extend nearly as far as Med-1 suggests and certainly does not extend to the FDCPA claim at issue here.

By contrast, Ms. Swike alleges in this case that Med-1 sent her multiple communications from which she was expressly supposed to be protected. Just as a plaintiff has standing to sue where a defendant fails to provide a required disclosure under the FDCPA, *e.g.*, *Long*, 223 F. Supp. 3d at 777, so too does Ms. Swike have standing to sue Med-1 for sending her something from which she was supposed to be protected. This is because the receiving of a prohibited debt communication constitutes a real injury in and of itself, *see, e.g.*, *Smith v. GC Servs. Ltd. P'ship*, 2017 WL 2629476, at *2 (S.D. Ind. 2017) (concluding in FDCPA case that receiving statutorily deficient communication constituted a concrete harm), in addition to the wasted time and annoyance of dealing with debt communications which the Court may reasonably infer followed, *see e.g.*, [Filing No. 1 at 2-3 (alleging that Med-1 left voicemail messages on Ms. Swike's phone to which she was required to respond)]; *Caprel v. Specialized Loan Servicing, Inc.*, 2017 WL 1739919, at *3 (N.D. Ind. 2017) (holding that FDCPA claim for dunning letter sent directly to represented debtor stated concrete injury because the letter "can cause that debtor confusion, and require him to spend time and effort deciphering the letter, deciding how to respond, and contacting

7

his attorney"); *Aranda v. Caribbean Cruise Line, Inc.*, 202 F. Supp. 3d 850, 857 (N.D. Ill. 2016) (observing, in Telephone Consumer Protection Act context, that Congress intended to deter "the receipt of unsolicited telemarketing calls that by their nature invade the privacy and disturb the solitude of their recipients" and rejecting defendant's *Spokeo* arguments); *see also, e.g.*, *Reed v. IC Sys., Inc.*, 2017 WL 89047, at *3 (W.D. Pa. 2017) (quoting *Spokeo*, 136 S. Ct. at 1549) ("Plaintiff, as the object of repeated phone calls from Defendant which caused her wasted time and annoyance, 'has suffered injury in precisely the form the [FDCPA] was intended to guard against.'"). The Court therefore joins the district courts of the Seventh Circuit in holding that "violations of the FDCPA," such as those alleged by Ms. Swike in this case, "constitute concrete injuries in fact, sufficient to find Article III standing." *Long*, 223 F. Supp. 3d at 776-77 (collecting cases).

Med-1 makes two final arguments. First, Med-1 argues that the nonbinding cases upon which it relies are "especially persuasive" because the Seventh Circuit generally applies an "unsophisticated consumer" standard in FDCPA cases while other circuits apply a "least sophisticated consumer" standard. [Filing No. 15 at 7.] This argument is unsupported and unavailing. Med-1 provides no explanation for how the substantive standard in FDCPA cases could be relevant in determining whether a complaint alleges a concrete injury.

Finally, in a section entitled "Persuasive Authority," Med-1 lists, in a string citation, a variety of cases from outside the Circuit. Most of these citations lack a database identifier or reporter citation, making the Court's review of these cases needlessly cumbersome. *Cf.* S.D. Ind. L.R. 7-1(f) ("[A] party must attach to the party's motion or brief a copy of any cited authority if it is not available on Westlaw or Lexis."). Furthermore, Med-1 fails to explain *why* the Court should find these cases persuasive. As evinced by the Court's detailed discussion above, the Court has

considered and rejected Med-1's arguments on their merits. Med-1's "Persuasive Authority" section does nothing to alter the Court's conclusion that Ms. Swike's allegations that she received statutorily prohibited communications suffice to establish a concrete injury.

## IV.
### CONCLUSION

For the foregoing reasons, the Court **DENIES** Motion to Dismiss for Lack of Standing. [Filing No. 14.]

Date: 9/15/2017

_____
Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record.**